IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DOUG TERLAU** | : | Case No. 1:14CV19 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER GRANTING IN PART** |
| | : | **DEFENDANT'S MOTION TO** |
| **AIR LIQUIDE INDUSTRIAL U.S., L.P.,** | : | **DISMISS; COMPELLING** |
| | : | **ARBITRATION; AND STAYING** |
| Defendant. | : | **PROCEEDINGS** |
| | : | |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint or Compel Arbitration and Stay Proceedings ("Motion to Dismiss").   (Doc. 4.)   Plaintiff Doug Terlau is a former employee of Defendant Air Liquide Industrial U.S., L.P. ("ALI" or "Air Liquide").   Terlau filed suit against ALI on November 20, 2013 in the Butler County, Ohio Court of Common Pleas, asserting one claim of retaliation for filing a workers' compensation claim pursuant to Ohio Revised Code § 4123.90.   Defendant ALI removed the action to this Court on January 7, 2014, and promptly filed its Motion to Dismiss on January 9, 2014, the basis of which is that the Alternative Dispute Resolution Agreement (the "ADR Agreement") Terlau signed while working for ALI requires binding arbitration of the current dispute.   For the reasons that follow, the motion is **GRANTED IN PART** and this action is **STAYED** pending arbitration.

## I.   BACKGROUND

### Basis of Terlau's Retaliation Claim

Terlau worked as a production assistant based primarily at ALI's plant is Middletown, Ohio from early 2010 through May 2013.   On December 11, 2012, Terlau suffered an injury related to inhaling "acid rain" comprised of sulfur dioxide while taking readings from an air

compressor at ALI's plant.   (Doc. 3 ¶ 15, Page ID 26.)   According to Terlau, the "injury resulted

in serious health issues including the loss of [his] voice, chronic laryngitis, bronchitis, and COPD."

(*Id*. ¶ 18, Page ID # 27.)   Terlau subsequently filed a claim for workers' compensation, which was

approved on the basis of "Chronic Laryngitis and Toxic Effects of Gas Vapors."   (*Id*. ¶ 26, Page

ID # 27.)   Terlau claims that after he filed the workers' compensation claim, his supervisors began

to harass him by, among other acts, repeatedly insinuating that he was a wimp and a whiner.   (*Id*.

¶¶ 27–30, Page ID # 28.)   On May 24, 2013, ALI fired Terlau, attributing the termination to

Terlau's failure to follow ALI's procedure regarding a breakthrough of carbon dioxide in the plant

machinery.

Terlau claims that the stated explanation for his termination was mere pretext for

retaliation for filing a workers' compensation claim.   Accordingly, Terlau filed the instant action

on November 20, 2013.

The ADR Agreement

In moving to dismiss this action, ALI relies upon the ADR Agreement Terlau entered into

on February 4, 2010 as a condition of his employment with ALI.   The scope of that agreement is

defined in paragraphs 2.1 and 2.2 as follows:

> 2.1    All disputes arising out of or relating to the interpretation and application of
> this ADR Agreement or the employee's employment with Air Liquide or
> the termination of employment, including for example and without
> limitation, any claims for unfair competition, theft of trade secrets,
> wrongful termination, unlawful discrimination, sexual harassment or other
> unlawful harassment, *or retaliation*, shall be resolved through ADR,
> including binding arbitration if necessary.   ADR has been instituted in
> order to provide a neutral, faster and more cost efficient forum for Air
> Liquide and an employee who has a dispute as outlined in this Agreement.
> This ADR Agreement provides the exclusive means for formal resolution of
> all such disputes between an employee and Air Liquide and is binding upon
> both Air Liquide and the employee.

2

NOTE: THIS ADR AGREEMENT IS A WAIVER OF THE PARTIES' RIGHTS TO A CIVIL COURT ACTION.

2.2     Disputes within the scope of this Agreement shall include, but not be limited to, the following: alleged violations of federal, state and/or local constitutions, statutes or regulations, including, without limitation, any claims alleging any form of employment discrimination of[sic] harassment; claims based on any purported breach of contractual obligation, including breach of the covenant of good faith and fair dealing; and claims based on any purported breach of duty arising in tort, including violations of public policy.  *Disputes related to workers' compensation and unemployment insurance are not arbitrable hereunder.*  Claims for benefits covered by a separate benefit plan that provides for arbitration are not covered by this ADR Agreement.  Charges that are filed with the U.S. Equal Employment Opportunity Commission ("EEOC") are not arbitrable under this Agreement while being processed.  Nothing in this ADR Agreement shall be deemed to prevent an employee or Air Liquide from filing a charge or other claim with the National Labor Relations Board.  This Agreement does not supplant Air Liquide's discretion to evaluate, discipline or terminate its employees within the normal course of business, although disputes arising out of such actions may, as described herein, be subject to this Agreement.

(Doc. 4-1 at Page ID # 43 (emphasis added).)

After defining its scope, the ADR Agreement sets forth the specific procedure to be followed in the event of a dispute governed by the agreement.   An employee can initiate a complaint by submitting written notification to the Manager of Employee and Industrial Relations at ALI "within 180 days or the applicable statute of limitations period."   (ADR Agreement ¶ 2.4, Doc. 4-1 at Page ID # 43.)   Though Terlau maintains that his workers' compensation retaliation claim is not governed by the agreement, he complied with that notification provision to protect his rights in addition to filing the instant lawsuit.

## II.     STANDARD

In its motion, Defendant ALI asks this Court to dismiss this action in its entirety or, in the alternative, to compel arbitration and stay all proceedings pending completion of that arbitration

pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").[1]  The FAA "manifests 'a liberal federal policy favoring arbitration agreements.'"  *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004), quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement."  *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 and 4).

The Sixth Circuit explains:

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement."  *Javitch*, 315 F.3d at 624.  "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24–25 (1983).  "There is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576–77 (6th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).

*Masco Corp.*, 382 F.3d at 627.

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted) (emphasis in original).  However, in contrast to the general presumption in favor of arbitration, when addressing the issue of *who* decides arbitrability, the presumption "is that the question of arbitrability is for judicial determination

---

[1] Paragraph 2.10 of the ADR Agreement provides that it is "subject to and governed by" the FAA.

unless there is clear and unmistakable evidence to the contrary." *Crossville Med. Oncology, P.C. v. Glenwood Sys.*, LLC, 485 F. App'x 821, 823 (6th Cir. 2012) (citing *First Options*, 514 U.S. at 944–45).

## III.    ANALYSIS

Terlau does not dispute that he and ALI are parties to the above-described ADR Agreement.   However, Terlau argues that (1) the agreement is invalid because it did not contain information required to be included by the Age Discrimination in Employment Act ("ADEA") as modified by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), and (2) his retaliation claim is directly related to workers' compensation and therefore is expressly excluded from the scope of the agreement.

Plaintiff's first argument is easily disposed of by reference to the very statute he cites. The OWBPA "imposes specific requirements for releases covering *ADEA* claims."   *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 424 (1998) (emphasis added).   As amended by the OWBPA, section 626(f) of the ADEA provides that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary" and sets forth a number of minimum requirements that a waiver must meet in order to be considered valid.   29 U.S.C. § 626(f); *see also Oubre*, 522 U.S. at 426.   An employer's failure to "comply with the OWBPA's stringent safeguards," renders an employee's release of claims "unenforceable . . . insofar as it purports to waive or release [the employee's] ADEA claim."   *Oubre*, 522 U.S. at 427–28 (1998) (noting that a noncompliant release may be enforceable as to other claims).   Terlau has not brought an ADEA claim, and he cites no precedent for his position that an arbitration agreement's failure to comply with the OWBPA renders the agreement unenforceable in general or invalid in its entirety.   Without such precedent, the Court finds that the requirements of the OWBPA do not

5

affect the enforceability of the ADR Agreement as to Terlau's workers' compensation retaliation claim.

Terlau's second argument, that the ADR Agreement expressly does not govern his workers' compensation retaliation claim, is likewise unavailing. The parties' dispute over the scope of the agreement stems from the fact that paragraph 2.1 states that disputes relating to "the termination of employment, including . . . claims for . . . wrongful termination . . . or retaliation, shall be resolved through ADR, including binding arbitration," while paragraph 2.2, hereinafter referred to as the "workers' compensation exclusion clause," states that "[d]isputes related to workers' compensation . . . insurance are not arbitrable hereunder." (ADR Agreement ¶¶ 2.1, 2.2, Doc. 4-1 at Page ID # 43.)

Both parties set forth valid arguments for their interpretation of that language. Defendant argues that the workers' compensation exclusion clause applies only to claims for workers' compensation insurance benefits, explaining that such claims had to be excluded because they are paid out of state funds and therefore cannot be arbitrated under Ohio law whereas workers' compensation retaliation claims are not paid out of state funds and are arbitrable. (Doc. 4 at Page ID # 39–40 (citing *Robbins v. Country Club Ret. Ctr. IV, Inc.*, 2005-Ohio-1338, 2005 WL 678765, at *3 (Ohio App. Mar. 15, 2005) ("workers' compensation and unemployment compensation are paid out of state funds and cannot be arbitrated in their entirety anyway") and Ohio Rev. Code. § 4123.90 (providing a private cause of action against an employer for workers' compensation retaliation)).) *See also Schramm v. Appleton Papers*, Inc., 162 Ohio App. 3d 270, 833 N.E.2d 336 (Ohio App. 2005) (discussing various differences, both procedural and substantive, between claims for workers' compensation benefits and for workers' compensation retaliation under Ohio

law).[2]  Plaintiff concedes that the language is ambiguous, but argues that under Ohio Law generally applicable to contract interpretation, the Court should construe such ambiguities against the drafter of the contact, in this case ALI.   (*See* Doc. 5 at Page ID # 56.)

Ultimately, this Court need not delve deeper into that dispute in order to determine the proper interpretation of paragraphs 2.1 and 2.2 of the ADR Agreement because, as Defendant points out, the ADR Agreement provides that "[a]ll disputes arising out of or relating to the *interpretation* and *application* of this ADR Agreement . . . shall be resolved through . . . binding arbitration."   (ADR Agreement ¶ 2.1, Doc. 4-1 at Page ID # 43 (emphasis added).)   While that language does not explicitly state that the "arbitrability" of a claim or dispute is subject to arbitration, the core provisions of the ADR Agreement about which disputes over interpretation or applicability may arise concern the scope or the type of claims that are covered by the agreement

---

[2] Defendant cites a somewhat similar case in which a court narrowly interpreted language in an arbitration agreement excluding from the agreement's scope "claims for . . . workers' compensation benefits or compensation," ultimately holding that the agreement required arbitration of the plaintiff's Tennessee law retaliatory discharge claim even though it was based on allegations that she was retaliated against for filing a workers' compensation claim.   *Harris v. Fiserv Solutions, Inc.*, 3:06-0121, 2006 WL 1083390, at *1–2 (M.D. Tenn. Apr. 24, 2006) (emphasis added).   There are at least two important differences between *Harris* and the instant case which prevent this Court from simply following *Harris* in declaring that the workers' compensation exclusion contained in the ADR Agreement in this case *clearly* excludes from arbitration only claims for workers' compensation insurance benefits.   First, a clause excluding "claims *for* workers' compensation benefits" is arguably narrower than a clause excluding "disputes *related to* workers' compensation."   Second, in *Harris*, the court emphasized that the retaliatory discharge claim brought by the plaintiff was based in the common law and did not arise from the workers' compensation statute:

> While claims for "workers' compensation benefits or compensation" are specifically excluded from arbitration, a claim for retaliatory discharge as a result of exercising a claim to worker's compensation benefits does not arise under the worker's compensation law.   The cause of action for retaliatory discharge was created by the Tennessee Supreme Court, not by the worker's compensation statute.   That is, terminating an employee for receiving worker's compensation benefits is actionable as a common law tort because the firing violates public policy, just as any retaliatory discharge based upon an employer's violation of a clearly expressed statutory policy is actionable.

*Id.* at *2 (internal citations omitted).   In contrast, Plaintiff Terlau's claim arises under Ohio Rev. Code. § 4123.90, which is part of the chapter of the Ohio Revised Code pertaining to workers' compensation.   Those differences illustrate that the interpretation of the workers' compensation exclusionary clause in this case may be a closer question.

and are thereby subject to ADR process, including binding arbitration.   Accordingly, the Court finds that the agreement unambiguously delegates authority to the arbitrator to settle the question of what types of claims qualify as "[d]isputes related to workers' compensation" and to decide whether Plaintiff's claim falls within the scope of the arbitration requirement.   *See Gen. Elec. Co. v. Latin Am. Imports, S.A.*, CIV.A.99-92, 2001 WL 1792454, at *1 (W.D. Ky. Aug. 10, 2001) (finding that an arbitration agreement clearly and unmistakably delegated authority to the arbitrator to decide issues of arbitrability by including language that all disputes arising out of or relating to the agreement or interpretation or construction of the agreement, including those related to the arbitration clause, had to be resolved in arbitration).

Defendant's request to compel arbitration is well-taken.   With respect to the issue of staying or dismissing the matter, the Court has discretion to choose either course of action.   *See* 9 U.S.C. § 3 (mandating courts to stay proceedings pending completion of arbitration); *Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999) (permitting courts to dismiss actions in which all claims are referred to arbitration).   Under the facts of this case, the Court believes that staying Plaintiff's claim will promote judicial economy.   Accordingly, this action will be stayed pending arbitration and the Court will retain jurisdiction to enforce the arbitration award, if any, or to resolve the dispute in the event the arbitrator determines Plaintiff's claim is in fact excluded from the scope of the ADR Agreement.

**IV.      CONCLUSION**

Based on the foregoing, the Court **GRANTS IN PART** ALI's Motion Dismiss.   (Doc. 4.)

The Court **COMPELS ARBITRATION** of the instant dispute pursuant to the terms of the ADR

Agreement and **STAYS** this action pending arbitration.

IT IS SO ORDERED.


S/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court